CARR, J.,
delivered ti e opinion of the court. The chancellor, in rejecting the claim of the appellants under the deed of January 1812, seems to have been governed wholly by the supposed failure of the wife to renounce in due and binding form, according to the terms of the statute, the provision made for the wife by the will of her first h'usband William Browne. As to the validity of the act of renunciation, we give no opinion. The provisions of the statute have, in our judgment, no application to the case. They were only intended to direct, how a widow shall proceed, who means to reject the provision made by her husband’s will, and take that made by the law: but this can relate only to the slaves and personal estate of the husband ; and so are the express words of the statute. It does not mean, that unless the widow renounces the will, she shall be prevented from making claim to property to which she is entitled, not under the will, but from a different source. With respect to such property, if it really belongs to the wife, and the husband has undertaken to dispose of it by will, this statute cannot govern the case: it must stand on the general doctrine of election, which disables a person from claiming under a will and against it. In Wallace v. Taliaferro, 2 Call, 447, this court required no renunciation of the will, but decided, that a husband could not devise slaves which he claimed in right of his wife, unless they were reduced into possession during the coverture. In Upshaw v. Upshaw, 2 Hen. & Munf. 381, the wife was entitled to slaves, in which her mother *had a dower right; the husband during the mother’s life devised these slaves away from the wife, but left her all his other property during her life; she took the provision made for her by the will; and on the death of her mother, took also the slaves, which her husband had devised away, and held the whole for many years: she was sued by the devisees of the slaves: this court held, it was a case of election; that the wife could not hold under the will, and yet disappoint its provisions as to the slaves; but they said also, that to make an election binding, a party must have a clear knowledge of his rights and of the funds; and, therefore, though the wife had held the estate given her by the will for twenty years, they would have been inclined even then (as she seemed to have acted in ignorance of her rights, and the consequences of her holding) to have given her the power of election if she had not so appropriated a part of the property she held under the will, as to disable her from returning it. These cases shew (if, indeed, anything can shew it more plainly than the statute itself) that the provision in question concerning a widow’s renunciation of her husband’s will, has nothing to do with a case, where she has a claim to property independent of and paramount to the will. In this case, the widow claimed under the deed of 1812. That deed is charged by the bill as being-fraudulent, and if creditors were before the court, it would no doubt be so considered as to them. But there is nothing shewn, which, as between the parties and volunteers claiming under them, can affect it in the slightest degree. It was contended that the qualification of the widow as adminis-tratrix with the will annexed, was such an election to take under the will, as precluded her from afterwards resorting to the deed. We do not think so. Her duty as adminis-tratrix was well and truly to execute the will, by paying first the debts, and then the legacies, as far as the goods, chattels and credits of the testator would extend, and the law charge her. But this related solely to-the property of the testator: the law could *382 charge her no farther. And even if this could *be considered an election, at the time, to abide by the will, we see that, before any change in the state of things was made, within twelve months, there was a decision not to take under the will, but to abide by the deed: the renunciation of the wife, made and recorded, followed by an act of renunciation by her and her second husband solemnly executed, though not called for by the statute, is surely sufficient evidence of this.
rhe decree is to be reversed with costs, so far as it directs an account of the property contained in the deed of 1812, and affirmed as to the residue, and the cause remanded, to be proceeded in according to the principles here declared.